IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MALCOLM HERMAN,** : | |
| Plaintiff : | |
| : | Civil Action No. 1:11-cv-898 |
| v. : | (Chief Judge Kane) |
| : | |
| **BARRY HOSTERMAN, et al.,** : | |
| Defendants : | |

## MEMORANDUM

Plaintiff Malcolm Herman initiated this action by filing a complaint on May 11, 2011. (Doc. No. 1.) Plaintiff filed an amended complaint on May 13, 2011. (Doc. No. 3.) On August 5, 2011, Defendants East Buffalo Township and Barry Hosterman filed a motion to dismiss. (Doc. No. 9.) The motion has been fully briefed and is now ripe for disposition. For the reasons stated more fully herein the Court will grant the motion to dismiss.

## I.    BACKGROUND[1]

In June 2008, East Buffalo Township and Lewisburg Borough engaged in a study regarding merging the two municipalities' police departments. (Doc. No. 3 ¶ 12.) Although he never attended a public meeting on the subject, Defendant Hosterman, who was serving as Chief of Police of the East Buffalo Township Police Department, made clear to the other officers in the department that he opposed the merger. (Id. ¶¶ 14-15.) Plaintiff, an officer employed by the East Buffalo Township Police Department, supported the merger and made his support known to

---

[1] In reviewing the motion to dismiss, the Court will accept Plaintiff's factual allegations as true and will "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir.2004); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).

members of both the Buffalo Township Police Department and the Lewisburg Borough Police Department. (Id. ¶¶ 19-20.) Defendant Hosterman was aware of Plaintiff's support for the merger. (Id. ¶ 21.)

On May 15, 2009, approximately eleven months after the merger study was done, Defendant Hosterman informed Plaintiff via a memorandum that he was under formal investigation because of "alleged harassment and unspecified misconduct." (Id. ¶¶ 22-23.) It is Plaintiff's position that he has never harassed another officer, nor has he been involved in misconduct of any kind. (Id. ¶ 24.) Plaintiff further notes that he believes Defendant Hosterman had never conducted a formal investigation of any other police officer concerning allegations of misconduct or harassment, although such an investigation would have been justified by "prior incidents involving other police officers. (Id. ¶ 25.)

Defendant Hosterman and Cory Iannacone, an attorney retained by East Buffalo Township, interviewed Plaintiff regarding the allegations of harassment and misconduct on May 19, 2009. (Id. ¶ 27.) Although the interview was recorded, Plaintiff was not provided a copy of the interview, nor did he receive a copy of any reports generated following the interview. (Id. ¶¶ 30-31.) Further, when Plaintiff attempted to invoke his Garrity rights during the interview he was told they were inapplicable because no criminal charges were being considered. (Id. ¶ 29.) Plaintiff was never disciplined as a result of the investigation and no adverse action was taken against Plaintiff as a result of the investigation. (Id. ¶¶ 38, 46.)

Two days after the interview, on May 21, 2009, Plaintiff's physician informed Defendant Hosterman that Plaintiff would not be attending work for a three week period as a result of hypertension due to work related stress. (Id. ¶ 32.) On June 4, 2009, Plaintiff's physician

informed Defendant Hosterman that Plaintiff's situational stress would prevent him from attending work "until further notice due to situational stress." (Id. ¶ 33.) Plaintiff did not return to work until September 11, 2009. (Id. ¶ 36.) Plaintiff was restored to active status following a physical examination performed by a physician chosen by East Buffalo Township and a medical release from his doctor. (Id. ¶ 39.) Plaintiff alleges that, as a result of Defendant Hosterman's conduct, Plaintiff "lost significant amounts of sick time, overtime, and suffered emotional distress, including anxiety, loss of life's pleasures, loss of sleep, weight loss, and other physical and emotional pain and suffering." (Id. ¶ 40.)

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum, 361 F.3d at 221 n.3. The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980). Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted). A court, however, "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906, 908 (3d Cir. 1997). Indeed, the Supreme Court has recently held

that while the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'" Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1955 (2009)).

**III.    DISCUSSION**

Plaintiff raises a claim of First Amendment retaliation raised pursuant to 42 U.S.C. § 1983 against Defendant Hosterman in Count One of the amended complaint and against Defendant East Buffalo Township in Count Two of the amended complaint. (Doc. No. 3.) Regarding the claim against Defendant Hosterman,[2] Defendant contends that the claim of First Amendment retaliation must fail because Plaintiff has not suffered from an adverse action sufficient to deter a person of ordinary firmness from exercising his or her rights under the First Amendment. Regarding the claim brought against Defendant East Buffalo Township, Defendants raise two issues: (1) Plaintiff has not stated an actionable constitutional injury; and (2) Plaintiff fails to identify a a policy, practice, or custom that caused any injury. The Court will consider the motion to dismiss as it pertains to Defendant Hosterman first, and will then

---

[2] Plaintiff asserted claims against Defendant Hosterman in his individual capacity and in his official capacity. Defendant argues that insofar as Defendant Hosterman has been sued in both his individual and official capacity that the claims are redundant and that the official capacity claim must fail. In his brief in opposition, Plaintiff concurs in Defendants' motion regarding the official capacity claim. Accordingly, the Court will grant the motion to dismiss claim without further analysis.

consider the motion as it pertains to Defendant East Buffalo Township.

    **A.    Defendant Hosterman**

In Count I of Plaintiff's amended complaint, Plaintiff raises a claim pursuant to 42 U.S.C. § 1983 based on alleged retaliation by Defendant Hosterman for Plaintiff having exercised his rights under the First Amendment. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). Defendants contend that Plaintiff has failed to establish the latter two elements of a First Amendment retaliation claim, namely, that Plaintiff suffered a retaliatory action or that any alleged retaliation was linked to protected conduct.

"[T]he key question in determining whether a cognizable First Amendment claim has been stated is whether 'the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights.'" McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (quoting Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). To that end, de minimis responses to protected speech such as criticism, false accusations, or verbal reprimands do not rise to the level of actionable retaliation. Brennan v. Norton, 350 F.3d 399, 419 (3d Cir. 2003) (quoting Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 686 (4th Cir. 2000)). Assuming a plaintiff has pleaded sufficient facts to support a finding of retaliation, a plaintiff must then show that "the protected activity was a substantial or motivating factor in the alleged retaliatory action." Baldassare v. New Jersey, 250 F.3d 188, 195 (3d Cir. 2001) (citing Mt.

Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977); Watters v. City of Phila., 55 F.3d 886, 892 (3d Cir. 1995); Swineford v. Snyder Cnty. Pa., 15 F.3d 1258, 1270 (3d Cir. 1994)).

Upon a review of the amended complaint, the Court cannot conclude that Plaintiff has properly pleaded a claim of First Amendment retaliation.  The only allegations in Plaintiff's amended complaint that might be construed as retaliatory activity are that: (1) Defendant Hosterman was "deeply antagonistic" toward Plaintiff; (2) that eleven months after the merger study began, Defendant Hosterman investigated Plaintiff for "alleged harassment and unspecified misconduct;" and (3) that approximately one year after the merger study began, Defendant Hosterman "sent a letter to [Plaintiff] falsely suggesting that [Plaintiff] had expressed discomfort in carrying a firearm."  (Doc. No. 3 ¶¶ 22-23, 34.)  Notably, however, Plaintiff also states that Plaintiff was never disciplined as a result of the investigation and no adverse action was taken against Plaintiff as a result of the investigation.  (Id. ¶¶ 38, 46.)  Plaintiff also alleges that Defendant Hosterman suggested the use of a mediator "to attempt to resolve the internal conflict."  (Id. ¶ 35.)

Taking these allegations as true, Plaintiff has failed as a matter of law to show that he has suffered retaliation sufficient "to deter a person of ordinary firmness from exercising his First Amendment rights."  McKee, 436 F.3d at 170 (internal quotation marks omitted).  Plaintiff has done nothing more than make a conclusory statement regarding Defendant Hosterman's "deep antagonism" without any supporting factual allegations raising the allegation beyond the speculative level, allege an investigation took place that resulted in no adverse action, and allege that Defendant Hosterman made a false accusation about Plaintiff's comfort in carrying a

firearm. These allegations are precisely the type of de minimis allegations that the Third Circuit has found are insufficient to support a claim for First Amendment retaliation. See, e.g., Revell v. City of Jersey City, 394 F. App'x 903, 906 (3d Cir. 2010) (concluding that threats to plaintiff's brothers, a verbal reprimand to stop her protected activity, being directed to undergo a random drug test, being directed to furnish a report explaining why she was absent one day, being called a "bad catalyst" and "half a cop," and being transferred to a new assignment were insufficient to support a claim of First Amendment retaliation); see also Benningfield v. City of Houston, 157 F.3d 369, 376 (5th Cir. 1998) (holding that while a reprimand may support a First Amendment retaliation claim, an investigation will not); Richards v. Conn. Dep't of Corr., 349 F. Supp. 2d 278, 289-290 (D. Conn. 2004) (concluding that an internal investigation "though it may have been inappropriate, led to no actions against" the plaintiff and thus could not support a First Amendment retaliation claim). Accordingly, because the alleged instances of retaliation are insufficient as a matter of law to deter an individual of ordinary firmness from exercising his First Amendment rights, the Court must grant Defendants' motion to dismiss this claim.

    **B.    Defendant East Buffalo Township**

A municipality cannot be held liable for the actions of its employees under Section 1983 based upon respondeat superior. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). A municipality may only be held liable for a plaintiff's injuries under Section 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Id. at 694. As explained in the preceding section, however, Plaintiff has failed to sufficiently plead the existence of an underlying constitutional injury. Accordingly, he may not maintain a suit against

Defendant East Buffalo Township.  See, e.g., Williams v. West Chester, 891 F.2d 458, 467 (3d Cir. 1989) (concluding that a municipality cannot be held liable under Monell unless one of its employees is primarily liable).

## IV.    CONCLUSION

The Court is sympathetic to Plaintiff's prolonged absence from work.  However, Plaintiff's pleadings fail to allege that he has suffered retaliation rising to the level of a constitutional deprivation.  His allegation of an internal investigation cannot rise to actionable retaliatory conduct because the investigation, admittedly, did not result in any adverse employment action.  Likewise, the letter allegedly sent by Defendant Hosterman suggesting that Plaintiff "expressed discomfort in carrying a firearm" is not alleged to have resulted in any adverse employment action.  At worst, the letter was a mild expression of, apparently untrue, criticism.  Finally, the allegation that Defendant Hosterman was "deeply antagonistic" toward Plaintiff is a quintessentially conclusory allegation.  Plaintiff has alleged no facts to support this statement other than the allegations regarding the letter and the investigation, neither of which would support a cause of action.  Because Plaintiff has failed to plead actionable retaliation, his claim against Defendant Hosterman must fail.  Likewise, because he has failed to plead an underlying constitutional violation, his claim against the municipality must fail.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MALCOLM HERMAN,** | : | |
| Plaintiff | : | |
| | : | **Civil Action No. 1:11-cv-898** |
| v. | : | **(Chief Judge Kane)** |
| | : | |
| **BARRY HOSTERMAN, et al.,** | : | |
| **Defendant**s | : | |

## ORDER

**AND NOW**, on this 19th day of October 2011, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss (Doc. No. 9) is **GRANTED WITHOUT PREJUDICE** to Plaintiff's right to file for leave to amend his complaint within twenty days of the date of this order. The Case Management Conference call scheduled for October 20, 2011, is cancelled.

    S/ Yvette Kane
Chief Judge Yvette Kane
United States District Judge
Middle District of Pennsylvania